

**SO ORDERED.**
**SIGNED this 7th day of February, 2014**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

/s/ Shelley D. Rucker
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

In re:

                                                                                            No.   13-13421
                                                                                            Chapter 7

JAMIE LEE THOMAS and
DUSTIN ELAINE THOMAS,

      Debtors;

JOHN H. CAMERON, JR. Administrator
CTA of the Estate of James J. Small,

      Plaintiff

v
                                                                                        Adversary Proceeding
                                                                                        No.   13-1100

JAMIE LEE THOMAS and
DUSTIN ELAINE THOMAS,

      Defendants.

1

*Appearances for John H. Cameron, Jr.*
    William Lee Gouger, Jr.
    Cameron & Gouger
    28 Courthouse Square, Suite 100
    Jasper, TN 37347

*Appearances for the Debtor*
    Charles G. Jenkins, Jr.
    Swafford, Jenkins & Raines
    32 Courthouse Square
    Jasper, TN 37347

**MEMORANDUM**

Plaintiff John H. Cameron Jr., the Administrator CTA of the Estate of James J. Small ("Estate"), ("Plaintiff" or "Administrator") has filed this adversary proceeding against Defendant Debtors Dustin Elaine Thomas and Jamie Lee Thomas (collectively "Defendants" or "Debtors") seeking a judgment from this court that the indebtedness owed to the Estate of James J. Small by the Debtors is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4). Plaintiff claims that a judgment awarded to the Estate pursuant to an Order of Judgment entered in the Chancery Court of Marion County in the Twelfth Judicial District of Tennessee in Case No. 7488 ("Judgment") in the remaining amount of $45,938.37 against the Defendants is non-dischargeable. *See* [Doc. No. 1, Complaint].[1]

The Defendants now move to dismiss the Plaintiff's claim of non-dischargeability against the Defendants. [Doc. No. 16]. They contend that the findings in the Judgment preclude a finding by this court that the Debtors engaged in fraud or defalcation while acting in a fiduciary capacity. The Plaintiff opposes the motion to dismiss. [Doc. No. 17]. The trial in this adversary proceeding is scheduled for March 5, 2014. The court has reviewed the briefing filed by the parties, the

---

[1] All citations to the court's docket entries are for the docket pertaining to Adversary Proceeding 13-1100, unless otherwise noted.

2

pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

### I. Background

The Defendants filed a voluntary Chapter 7 Bankruptcy Petition on July 12, 2013. *See* [1:13-bk-13421, Doc. No. 1]. The Plaintiff filed his complaint ("Complaint") on August 22, 2013. [Doc. No. 1, Complaint]. The Plaintiff asserts that he is a secured creditor seeking an order of nondischargeability of a certain debt owed by the Defendants to the Plaintiff based on the Judgment entered by the Chancery Court of Marion County, Twelfth Judicial District of Tennessee, Case No. 7488. Complaint, ¶ 1. The Plaintiff asserts that the Chancery Court determined that the Debtor Dustin Elaine Thomas "acting through a Power of Attorney granted to her by the Deceased, James J. Small, in violation of her fiduciary duties transferred both real estate, vehicles, bank accounts and other assets of James J. Small to herself and her husband, Jamie Lee Thomas." Complaint. The Plaintiff seeks a judgment from this court that the amount of $45,938.37, plus costs, attorneys' fees, and interest, owed to the Plaintiff by the Debtors is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

In support of their motion to dismiss, the Defendants attached a copy of the transcript of proceedings in the Chancery Court on May 29, 2012 during which the Chancellor issued his findings of fact and conclusions of law relating to the Judgment and the Administrator's claims against the Defendants. [Doc. No. 16-2, Ex. 2]. Although the Chancery Court's ruling is lengthy, the court will quote the most pertinent portions of it here below.

> Mr. Cameron brought suit on behalf of the estate of James J. Small to recover property owned by Mr. Small from Dustin Elaine Thomas and her husband, Jamie Lee Thomas. The reason for this action is Mrs. Thomas used the authority she was given by a power of attorney from Mr. Small to transfer all of his property

to herself and her husband without consideration. The estate claims this [transfer] was a breach of fiduciary duty owed to Mr. Small and as a result of undue influence. . . .

The Thomases' response to this complaint is simply they took no independent action in the transfer of property. That is to say, Mrs. Thomas says she did what Mr. Small directed her to do and that all transfers were supported by consideration. The Thomases also filed a countercomplaint seeking payment for the care they provided Mr. Small during his lifetime under a quantum mer[u]it theory.

Mr. Small moved to Marion County, Tennessee around 2003 from the state of Missouri. His home was near a bait and tackle store owned by Terry and Treva Davis, the mother and the father of Dustin Thomas. He became friends with the Davises and their daughter Dustin. He came to the store on a regular basis to enjoy the company and friendship of others as well as partake of food and beverage. This friendship lasted about seven years and ended with his death November 18, 2010.

The closeness of their friendship is not seriously disputed nor was any issue of undue influence raised regarding Mr. Small's execution of a general power of attorney to Mrs. Thomas on January 15, 2008 or regarding the medical power of attorney he executed to her a few days later. The time frame which gives rise to the dispute begins in September of 2010 and ends with Mr. Small's death on November 18, 2010. During that time Mrs. Thomas using the power of attorney from Mr. Small transferred substantially all of his property to herself, her husband, and to their son.

Counsel for all parties agreed a presumption of undue influence arose because Mrs. Thomas had utilized the power of attorney to transfer these assets to herself, her husband, and her son. This presumption of undue influence can only be overcome by clear and convincing evidence of the fairness of the transaction. . . .

The relationship evolved over a period of years and seemed to intensify after Mr. Small granted the two powers of attorney to Mrs. Thomas in 2008. Mrs. Thomas testified she used the power of attorney to help Mr. Small pay his bills, buy his groceries, and pay his taxes. There's no doubt during his life Mr. Small favored the Thomases and the Davises with gifts. He gave them two golf carts that were valued at approximately $28,000 and he paid Mrs. Thomas's son['s] school tuition and paid for his orthodontic braces.

Mrs. Thomas used the medical power of attorney primarily when Mr. Small's health condition worsened. He was never in great health and suffered from what is referred to as COPD. . . .

. . . it is Mrs. Thomas's use of the power of attorney for Mr. Small that gets the most scrutiny. Between November 1, 2010, and November 22, 2010, Mrs. Thomas under the power of attorney transferred some $120,792.69 in bank deposits and investment accounts to herself and her husband, a 1999 Ford pickup to her son, and paid for the repair of a Volkswagen automobile that she owned or eventually got and conveyed Mr. Small's home to herself and her husband. These transfers impoverished Mr. Small and left him with few or no assets. In fact, two of the

transfers from Putnam Investments took place four days after Mr. Small died.

Mrs. Thomas and her husband are barred by Tennessee Code Annotated 24-1-203, commonly referred to as The Dead Man's Statute, from giving testimony regarding these transactions involving Mr. Small. However, her mother, father and Ms. Crews are not so barred. Each one testified as to the relationship Mr. and Mrs. Thomas had with Mr. Small and that he often said he wanted them to have his stuff. Mrs. Davis testified Mr. Small wanted Mrs. Thomas to have his house because she was like a daughter. However, on cross-examination she said the house was to go to Mrs. Thomas at his death.

Similarly, Mr. Davis and Mr. Small – Mr. Davis said Mr. Small wanted Mrs. Thomas to have his stuff at death and Ms. Crews testified by deposition and stated that she had not seen Mr. Small since 2009 but said Mr. Small was very good friends with the Davises and the Thomases and they all did things for him. She said Mr. Small told her he wanted to leave them his house and planned to leave them his assets. Mr. Small made no testamentary device to the Thomases. All transfers were made by Mrs. Thomas using the power of attorney while Mr. Small was still alive. Again, the bulk of these transfers occurred between November 1 and November 22, 2010.

With regard to these transfers, no witness heard Mr. Small direct Mrs. Thomas to carry out these transfers. In fact, much was made of his medical condition during this time. There were significant differences in the proof regarding Mr. Small's medical and cognitive abilities between November 1, 2010 and his death November 18, 2010. It appears to me his condition was severely impaired....

No proof was introduced regarding whether Mr. Small received any independent advice concerning the advisability and consequences of these transfers which clearly impoverished him. In a careful and exacting cross-examination of Mrs. Thomas, she confirms the amounts shown on Exhibit 8 of the trial were transferred to her and her family as well as Exhibit 4, the quit claim deed to Mr. Small's house, all between November 1 and November 22, 2010.

Mrs. Thomas clearly held an unrestricted power of attorney which created a confidential relationship and established her as the dominant party. She clearly conferred the benefit upon herself out of Mr. Small's estate.

I find the Thomases have failed to meet their burden of proof to overcome the presumption in this case and that all transfers should be set aside and treated as part of the estate of Mr. Small. . . .

On the issue of punitive damages, I find this to be without merit. Judgment for the estate of James J. Small in the amount shown on Trial Exhibit 10 in the amount of $120,792.60. It was unclear about whether the total included the $5,438 paid to York Small Engine for the work done on the Volkswagen owned by the Thomases. In addition, the title to the 1999 Ford pickup should be returned to the estate and the Thomases shall execute a quit claim deed to the real estate described in Exhibit 4 back to the estate. Further, the Thomases are ordered to restore the $17,400 taken to cover the overdrafts. . . .

5

[Doc. No. 16-2, Transcript of May 29, 2012 Marion County Chancery Court Hearing].

## II.    Jurisdiction

28 U.S.C. §§ 157 and 1334, as well as the general order of reference entered in this district provide this court with jurisdiction to hear and decide this adversary proceeding. The Plaintiff's action regarding the dischargeability of particular debts is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

## III.    Standard of Review

Federal Rule of Bankruptcy Procedure 7012(b) states that Federal Rule of Civil Procedure 12(b) applies to adversary proceedings. *See* Fed. R. Bankr. P. 7012(b). Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "treat as true all of the well-pleaded allegations of the complaint." *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Id.* (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007).   The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quotation omitted). The court will thus review the motion to dismiss by assuming the facts as alleged by the Plaintiff.

6

The Defendants have attached two exhibits to their motion to dismiss. [Doc. No. 16-1, Ex. 1; Doc. No. 16-2, Ex. 2]. Exhibit 1 is a copy of an order and an amended complaint associated with the Marion County Chancery Court Case Docket No. 7488. Exhibit 2 is a transcript of the May 29, 2012 hearing in the Marion County Chancery Court Case Docket No. 7488 in which the Chancellor provided the parties with his findings of fact and conclusions of law and stated the amount of the Judgment against the Defendants. Although these exhibits were not attached to the Complaint, the court may consider them on this motion to dismiss as they are central to the Plaintiff's claims. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001)).

**IV.** **Analysis**

**A.** **Preclusive Effect of State Court Judgment**

The question in this case is whether the issues were the same issues as those addressed by the state court in the Judgment. If the issues were identical, then the doctrine of collateral estoppel may preclude the Plaintiff from relitigating those issues here, if the other elements of collateral estoppel are satisfied. If the state court decided those issues in such a manner as to prohibit this court from finding that the Debtors' conduct was fraud or defalcation while acting in a fiduciary capacity, the Defendants would then be entitled to an order dismissing the Plaintiff's claim of nondischargeability.

The Defendants argue that in its findings the Chancery Court:

> stated that the issue of punitive damages was without merit . . . thus in effect denying the finding of fraud. Since this matter has now been adjudicated and the Court did not find that the Defendants Dustin Elaine Thomas and Jamie Lee Thomas's acts were fraudulent, then the Defendants' liability to the Plaintiffs is dischargeable. Further, the findings of the court did not find that the Debtors' acts constituted defalcation.

[Doc. No. 16, Defendant's Motion to Dismiss]. The Defendants further argue that Jamie Lee Thomas should be dismissed because he was not in a fiduciary relationship with the Plaintiff or Mr. Small.

The Full Faith and Credit Clause states in relevant part that: "[s]uch . . . judicial proceedings . . . so authenticated, shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. The U.S. Supreme Court has clarified that whether an issue raised in a subsequent federal court proceeding is precluded by an earlier state court judgment must be determined by reviewing the law of the State that issued the judgment. *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 105 S.Ct. 1327 (1984). As the Supreme Court explained in *Marrese*,

> This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken."

*Id.* at 380, 105 S.Ct. at 1332 (quoting *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481-82, 102 S.Ct. 1883, 1897 (1982)); *see also, Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Further, the Supreme Court has also clarified that "collateral estoppel principles do

8

indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 285 n.11, 111 S.Ct. 654, 658 n.11 (1991).

The Sixth Circuit has informed courts in this Circuit that collateral estoppel will apply if: "(1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issues, and (2) the issue was fully and fairly litigated in state court." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999). As another court in this district explained, "[u]nder Tennessee law, 'collateral estoppel bars relitigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment in the earlier case.'" *Tucker v. Cross (In re Cross)*, No. 08-5029, 2009 WL 981900, at *3 (Bankr. E.D. Tenn. Apr. 13, 2009) (quoting *Rally Hill Prod., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir. 1995)). This court will consider whether the issues for non-dischargeability pursuant to Section 524(a)(4) defalcation or embezzlement were fully and fairly litigated in the Chancery Court.

    **B.**    **Non-dischargeability Pursuant to 523(a)(4)**

    **1.**    **Dismissal of Mrs. Thomas**

11 U.S.C. § 523(a)(4) states in relevant part: "A discharge under section . . . 727 of this title does not discharge an individual debtor from any debt – . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . ." 11 U.S.C. § 523(a)(4). Federal common law will determine the meaning of the terms in Section 523(a)(4). *See SmithKline Beecham Corp. v. Lam (In re Lam)*, No. 06-68805-MGD, 2008 WL 7842072, at *3 (Bankr. N.D. Ga. Mar. 27, 2008) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d 901 (7th Cir. 1991); *In re Wallace*, 840 F.2d 762 (10th Cir. 1988)) (other citations omitted). The creditor must prove by a

preponderance of the evidence that a debt is nondischargeable under 11 U.S.C. § 523. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659 (1991). The Plaintiff asserts that the Chancery Court's ruling does not preclude him from attempting to prove defalcation under Section 523(a)(4).

With respect to defalcation while acting in a fiduciary capacity, the Sixth Circuit has provided that the preponderance of the evidence must establish: "(1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir. 2009) (citing *Board of Trustees v. Bucci (In re Bucci)*, 493 F.3d 635, 642 (6th Cir. 2007)). The Court further cautioned that "the term 'fiduciary capacity' is narrower here than it is in some other contexts: section 523(a)(4) covers only 'express' or 'technical trusts' and not trusts arising out of 'the very act of wrongdoing.'" *In re Patel*, 565 F.3d at 968 (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331, 55 S.Ct. 151 (1934)). In addition, "[a] 'defalcation' encompasses not only embezzlement and misappropriation by a fiduciary, but also the 'failure to properly account for such funds.'" *In re Bucci*, 493 F.3d at 639 (quoting *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir. 1985)). The Sixth Circuit has also:

> adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. Accordingly, the defalcation provision applies to 'only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor.' To establish the existence of an express or technical trust, a creditor must demonstrate: '(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary.'

*In re Bucci*, 493 F.3d at 639-40 (quoting *R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 179 (6th Cir. 1997)). The expression of a trust relationship in this case is a power of attorney.

10

A copy of the power of attorney was not an exhibit, although the Chancellor indicated that the power was sufficient for paying bills and taxes, and was ultimately used to transfer title to real estate. Exhibit 2 at 7 and 9.

A mere power of attorney may not be sufficient to establish the narrow fiduciary relationship contemplated by 11 U.S.C. § 523(a)(4) as interpreted by the Sixth Circuit. *See Meis v. Meis (In re Meis)*, 200 B.R. 166, 169 (N.D. Ohio 1996) (citing *Bast v. Johnson (In re Johnson)*, 174 B.R. 537, 541-42 (Bankr. W.D. Mo. 1994)). In *In re Johnson* the bankruptcy court noted that the narrow construction of "fiduciary" in Section 523(a)(4) pertains to relationships involving a technical or express trust which:

> may be either one in which a formal document is executed which established the rights and duties of the parties, or one in which trust-type obligations are imposed pursuant to statute or common law. As a rule, the general fiduciary duty created by a power of attorney gives rise to an agency relationship, but does not give rise to the fiduciary capacity required by section 523(a)(4). However, if the debtor has a sufficiently elevated level of fiduciary duty, section 523(a)(4) could apply to an agency relationship.

174 B.R. at 541 (citations omitted). In another case, a bankruptcy court specifically reviewed the terms of the power of attorney and the relationship of the parties to determine that a power of attorney could fulfill the requirements of Section 523(a)(4). *Reich v. Burgess (In re Burgess)*, 106 B.R. 612, 620 (Bankr. D. Neb. 1989).

In this case, the chancery court found that the Plaintiff had a power of attorney "which created a confidential relationship." [Doc. No. 16-2, Ex. 2, p. 12]. For the Defendants to succeed, they must convince the court that a finding of a "confidential relationship" cannot be "a pre-existing fiduciary relationship." The court is not convinced that Tennessee's concept of a confidential relationship could not be found to be a pre-existing fiduciary relationship under the

11

facts of this case. The relationship was created before the filing, it was evidenced by a writing, and before the bankruptcy filing, the chancery court entered a judgment for the return, transfer and restoration of the property to the decedent's estate. This is not a situation in which this court is being asked to impose a constructive trust after the filing of a bankruptcy case.

The Defendants move to dismiss the Plaintiff's claim on the basis of collateral estoppel. They argue that the Chancellor did not find defalcation in his ruling. The Chancellor's ruling does not address the specific elements of defalcation under Section 523(a)(4), but it does not make a finding that there was no fiduciary relationship. This court finds nothing in either the state court finding of a failure to rebut the presumption of undue influence or the Judgment in favor of the Estate that would preclude this court from finding the elements of defalcation under Section 523(a)(4).

The Defendants further argue that because the Chancellor did not find fraud sufficient to impose punitive damages, the Plaintiffs cannot establish the elements of their defalcation claim. Defendants argue that because the Chancellor stated that "[o]n the issue of punitive damages, I find this to be without merit," the Plaintiff is precluded from demonstrating his claim of defalcation. This court disagrees.

The U.S. Supreme Court recently ruled on the level of scienter required to prove a claim of defalcation. *See Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013). In that case the court held that the scope of the term "defalcation": ". . . includes a culpable state of mind requirement akin to that which accompanies application of the other terms in the same statutory phrase. We describe that state of mind as one involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757. The Supreme Court further

12

explicated the level of intent required for defalcation:

> Thus, where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, the term requires an intentional wrong. We include as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Thus, we include reckless conduct of the kind set forth in the Model Penal Code. Where actual knowledge of wrongdoing is lacking, we consider conduct as equivalent if the fiduciary "consciously disregards" (or is willfully blind to) "a substantial and unjustifiable risk" that his conduct will turn out to violate a fiduciary duty. That risk "must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves *a gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation."

*Id.* at 1759 (emphasis in original) (quotations omitted). Thus, although the Supreme Court has clarified the level of intent required to demonstrate defalcation pursuant to Section 523(a)(4), it does not appear that the level of fraud required for punitive damages under Tennessee law is the equivalent of the level of intent required to demonstrate defalcation under *Bullock*. The Supreme Court described the standard as "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Id.* at 1757. There is nothing in the Chancery Court's findings of fact that would preclude this court from finding that the Plaintiff can demonstrate that Mrs. Thomas had knowledge of or acted with gross recklessness regarding any fiduciary duty that she owed to Mr. Small.

Under Tennessee law punitive damages are reserved for "cases involving only the most egregious of wrongs." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. Sup. Ct. 1992). Such damages may only be awarded if a court concludes that a "defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." *Id.* Further, they must be proven by "clear and convincing evidence." *Id.* However, Tennessee courts have affirmed compensatory damages for fraud while also finding no evidence sufficient to award punitive damages. *See e.g.,*

13

Case 1:13-ap-01100-SDR    Doc 24    Filed 02/07/14    Entered 02/07/14 16:55:56    Desc
Main Document    Page 14 of 15

*Gage v. Seaman*, No. 03A01-9711-CH-00503, 1999 WL 95185 (Tenn. Ct. App. Feb. 23, 1999). Thus, under Tennessee law, not all fraudulent behavior will rise to the level required to merit an award of punitive damages.

Therefore, although the Chancellor did not find punitive damages to be warranted under the evidence presented, such a finding does not collaterally estop this court from finding defalcation under the standard described in *Bullock*.

Accordingly, Defendants' motion to dismiss Plaintiff's Section 523(a)(4) claim against Dustin Elaine Thomas will be DENIED.

### 2. Dismissal of Mr. Thomas

The Defendants further seek the dismissal of Mr. Thomas, asserting that there is no evidence that he was a fiduciary or committed defalcation pursuant to Section 523(a)(4). The court notes that although the Chancellor's findings of fact and conclusions of law found that only Mrs. Thomas had the power of attorney, the court entered the Judgment against both Mr. and Mrs. Thomas. [Doc. No. 16-2, pp. 5, 6, 12]. The chancery court found that "the Thomases have failed to meet their burden of proof to overcome the presumption in this case and that all transfers should be set aside and treated as part of the estate of Mr. Small." *Id.* at p. 12.

Further, the Complaint asserts that "Dustin Elaine Thomas, acting through a Power of Attorney granted to her by the Deceased, James J. Small, in violation of her fiduciary duties transferred both real estate, vehicles, bank accounts and other assets of James J. Small to herself and her husband, Jamie Lee Thomas." [Doc. No. 1, Complaint, p. 2].

It is possible that the Plaintiff may demonstrate that Mr. Thomas conspired to commit defalcation with Mrs. Thomas by joining in an agreement to commit the "wrongful acts." *See e.g.,*

14

*Buchholz v. Dewey (In re Dewey)*, 263 B.R. 258 (Bankr. N.D. Iowa 2001) (addressing whether plaintiff demonstrated conspiracy to commit defalcation by a preponderance of the evidence). It may also be that the Plaintiff cannot demonstrate that Mr. Thomas was a fiduciary sufficient to meet the elements required for a defalcation claim against him. However, based solely on the pleadings and evidence before the court on this motion to dismiss, the court cannot say that the Plaintiff will be unable to prove the elements of defalcation with respect to Mr. Thomas based on evidence to be provided at trial. Therefore, the court declines to dismiss the Plaintiff's claim of defalcation against Mr. Thomas at this time. The motion to dismiss the Section 523(a)(4) claim against Mr. Thomas will be DENIED.

### V.    Conclusion

As described *supra*, the court will DENY the Defendants' motion to dismiss regarding whether the remaining amount awarded pursuant to the Judgment constitutes a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(4) against both Mrs. and Mr. Thomas.

A separate order will enter.

# # #